IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


CHERYL A. GREERE,

      **Plaintiff,**

vs.                                              No.  02cv1574 DJS

JO ANNE B. BARNHART,
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's (Greere's) Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, For a Rehearing **[Doc. No. 19]**, filed January 2, 2004, and fully briefed on April 2, 2004.  On August 16, 2002, the Commissioner of Social Security issued a final decision denying Greere's claim for disability insurance benefits.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is well taken and will be GRANTED.

### I.  Factual and Procedural Background

Greere, now forty-seven years old, filed her application for disability insurance benefits on November 28, 2000 (Tr. 55), alleging disability since September 18, 1999, due to major depression and a panic and anxiety disorder.  Tr. 18.  Greere has a high school education (Tr. 71) and past relevant work as a tile grout sealer, an apprentice herbalist, a temporary clerical worker, and a beverage cart server.  Tr. 22.  On August 16, 2002, the ALJ denied benefits, finding Greere had severe impairments, consisting of a major depression and a panic and anxiety disorder, but

these disorders did not meet or medically equal one of the impairments listed in Appendix I, Subpart P, Regulations No. 4. Tr. 18. The ALJ further found Greere retained the residual functional capacity (RFC) for simple unskilled work that did not require extensive contact with the public or her coworkers. Tr. 22. The ALJ further found Greere's "testimony and other evidence [did] not establish functional limitations to the extent alleged." Tr. 18. Greere filed a Request for Review of the decision by the Appeals Council. On November 9, 2002, the Appeals Council denied Greere's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Greere seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative

evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse, Greere makes the following arguments: (1) the ALJ erred in discounting her treating physician's opinion; (2) the ALJ erred in relying on the vocational expert's testimony; and (3) the ALJ made improper conclusions regarding the effect of her mental impairment on her ability to work.

## A.  Treating Physician Opinion

Generally, the ALJ must "give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). "Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)(quoting Social Security Ruling 96-2p, 1996 WL 374188, at *4).  A treating physician's opinion is considered in relation to factors such as its consistency with other evidence, the length and nature of the treatment relationship, the frequency of examination, and the extent to which the opinion is supported by objective medical evidence. 20 C.F.R. § 404.1527(d) (1)-(6).  If the physician's opinion is "brief, conclusory and unsupported by medical evidence," that opinion may be rejected. *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988). Moreover, a treating physician's opinion that a claimant is totally disabled is not dispositive "because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]." *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

4

In this case, the ALJ reviewed Dr. Brandt's clinical records but did not accord significant weight to Dr. Brandt's opinion (Tr. 21) and accorded no weight to Dr. Brandt's May 16, 2002 assessment of Greere's work-related abilities (Tr. 22).  Dr. Brandt is Greere's psychiatrist and has treated her for depression since 1993.  Tr. 346.  Significantly, the ALJ's decision to completely disregard Dr. Brandt's opinion of disability was in part because Dr. Brandt assigned Greere a GAF[1] score of 5 in the May 16, 2002 Medical Assessment of Ability to do Work-Related Activities (Mental).  Tr. 355.  The ALJ cited substantially to Dr. Brandt's clinical records noting:

> The medical records show that the claimant has a history of depression and has been under the care of Dr. Daniel Brandt for a number of years.  She experienced an exacerbation of symptoms in February 1998, prior to her alleged disability onset.  This episode was marked by suicidal thoughts and extreme anger, and required several days of inpatient hospitalization and stabilization with psychotropic medications.  Subsequent progress notes show that Dr. Brandt continued to see the claimant regularly on an outpatient basis.  On January 14, 2001, he wrote a letter on her behalf, stating that he was treating her for a major depression, a dependent personality disorder, and a communication disorder.  He rated her global assessment of functioning (GAF) at 55, denoting a moderate level of symptom severity.  In describing her mental status he said her mood was depressed and anxious and she had frequent bouts of hopelessness and suicidal ideation with some preparatory thoughts.  At the same time, he described her as alert and oriented, and cleanly and appropriately dressed.  She had good eye contact, adequate attention, normal speech, and appropriate affect, adequate insight and judgment, and no evidence of psychotic thinking.  He noted that she had been frustrated by not being successful in frequent attempts at employment, and he concluded that her social fear and continued relationship strains, secondary to a previous divorce, had prevented her from establishing any consistent employment.  In another letter of November 21, 2001 Dr. Brandt said he thought the claimant could reasonably achieve a 20-hour work week but would likely get sick and not be able to work at all if she continued her current full-time schedule (Exhibits 1F; 5F; 13F;15F:51-107).

---

[1] Global Assessment of Functioning (GAF score) is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning."   American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision 4th ed. 2000) (DSM-IV-TR).  The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death.).  DSM-IV-TR at 34.

\*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\*

On September 12, 2001, the claimant expressed some suicidal thoughts to Dr. Brandt over the telephone, and he in turn called emergency medical personnel who brought her to a hospital emergency department for evaluation and monitoring. She was verbally aggressive and insulting initially, but her condition stabilized within a few hours. Dr. Vivian Barsky, an emergency department physician who interviewed her, reported a relatively normal physical and mental status examination. The claimant appeared depressed but she interacted normally during the interview, with appropriate speech and intact cognitive functioning in terms of memory, concentration, attention, orientation, and judgment. After several hours in the emergency department, her condition improved, she denied any further suicidal ideation, and hospital personnel discharged her with instructions to continue her medications and follow-up with regular visits to Dr. Brandt (Exhibit 15F:4-15).

On December 19, 2001, Dr. Brandt completed another medical source statement regarding the claimant's ability to do work-related activities. He rated her as having no limitations in her ability to understand and remember simple instructions, work without supervision, and be aware of normal hazards in the workplace. He considered her mildly limited in the ability to attend and concentrate, carry out instructions, and adapt to changes in the workplace. He felt she had moderate limitations in her ability to interact with the public, co-workers and supervisors because of her low frustration tolerance. Dr. Brandt then wrote another letter for the claimant on April 25, 2002, stating that he considered her unable to sustain employment and was disabled. (Exhibit 6F; 13F:1).

Finally, the record includes a few recent progress notes from Dr. Brandt, as well as answers to a series of interrogatories which the claimant's representative submitted to him in May 2002. He again listed her diagnoses as a major depression and anxiety and expressive language disorders, characterized by mood disturbances, emotional lability, numerous depressive symptoms, generalized persistent anxiety and panic attacks, and unstable personal relationships. Dr. Brandt then showed that in his opinion these impairments produced a moderate level of restriction in the claimant's daily activities, caused extreme difficulties in maintaining social functioning, concentration, persistence and pace, and generated episodes of deterioration or decompensation in work or work-like settings. He also completed another medical assessment of ability to do work-related activities, showing that the claimant had a limited but satisfactory ability to follow work rules, function independently, understand and remember simple job instructions, demonstrate reliability, and relate in an emotionally stable social situation. He rated as unsatisfactory her ability to relate to co-workers and the public, deal with work stresses and behave in an emotionally stable manner. He felt she had no useful ability at all to interact with supervisors, and he assigned a current GAF score of five (Exhibit 16).

\*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\*

Dr. Brandt indicated intact mental functioning in January 2001, noting that the claimant was alert, fully oriented, and appropriately dressed. Her mood was depressed and anxious, but her attention, speech, affect, insight and judgment were all adequate and appropriate (Exhibit 5F:32). Dr. Marquez reported a similar mental status examination in March 2001. The claimant's mood was again depressed and she admitted to suicidal ideations, but

all of her cognitive functions were intact.  Dr. Marquez completed a medical source statement showing the claimant was only mildly limited in her abilities to perform work activities (Exhibit 2F:3/5-6).  Dr. Brandt completed the same form on December 19, 2001, and concluded that the claimant had no limitations at all in her abilities to understand the (sic) remember simple instructions, work without supervision, and react appropriately to normal workplace hazards.  He agreed with Dr. Marquez that she was mildly limited in her ability to attend and concentrate and adapt to changes in the workplace.  He felt she was moderately limited in her ability to interact with the public, co-workers, and supervisors (Exhibit 6F:2-4).

A few months later Dr. Brandt presented very different opinions.  He wrote on April 25, 2002 that the claimant was not able to sustain employment and was disabled (Exhibit 13F:2).  In May 2002, he completed forms showing that many of her abilities to perform work-related functions were seriously limited and unsatisfactory.  He said she would have extreme difficulties in maintaining social functioning and extreme deficiencies of concentration in work settings.  He rated her GAF at five (Exhibit 16F).

For a number of reasons, I cannot accord significant weight to Dr. Brandt's most recent opinions.  They portray the claimant in an **unrealistic and exaggerated fashion**.  Dr. Brandt completed a work assessment just a few months earlier on December 19, 2001.  At that time, he showed only mild limitations in most work-related abilities and no limitations at all in the claimant's ability to work without supervision and follow short and simple instructions.  There is no indication in the record that the claimant's condition significantly deteriorated between December 2001 and May 2002.  Despite the lack of any credible information that would demonstrate such a marked deterioration, Dr. Brandt's assessment of May 2002 **assigns a GAF of five**.

The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV) describes a GAF rating between one and ten as follows:  "Persistent danger of severely hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death."  **The record clearly does not support such a low rating**.  Even a score between 21 and 30 is defined as an inability to function in almost all areas, indicating that **a rating of five would denote essentially a total inability to function independently**.  Dr. Brandt himself showed that the claimant had more than a satisfactory ability to maintain personal appearance, and a limited but still satisfactory ability to follow work rules, function independently, understand and remember even complex job instructions, and relate in an emotionally stable social situation.  In his assessment of January 14, 2001, Dr. Brandt assigned a much more realistic GAF score of 55, which the DSM-IV defines as "Moderate symptoms OR moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers)."  **In view of its obvious exaggerations, I cannot give any weight to Dr. Brandt's most recent assessment of the claimant's work-related abilities.**  In keeping with his earlier opinions, and with those of Dr. Marquez, I find that she retains the mental and emotional capability to do certain kinds of simple, unskilled work that do not require extensive contact with the public or co-workers.

Tr. 18-22 (emphasis added). On August 22, 2002, after the ALJ entered his unfavorable decision, Dr. Brandt submitted a letter to the ALJ.[2] Tr. 362. Dr. Brandt explained he had mistakenly assigned Greere a GAF score of 5 rather than 55. Dr. Brandt opined a GAF score of 55 indicated an average function. However, Dr. Brandt further opined that, because Greere's GAF scores varied from 45 to 65, she was unable to perform consistent employment. Dr. Brandt felt this error "had a significant effect on the judge's determination of [his] credibility regarding [his] report on Ms. Greere's case." *Id.*

It is clear from the ALJ's decision that Dr. Brandt's error significantly impacted his analysis and finding of nondisability. Accordingly, because the ALJ did not have the opportunity to review Dr. Brandt's August 22, 2002 letter, the Court will remand this case to allow the ALJ to reconsider Dr. Brandt's opinion of disability in light of this letter. The Court notes the ALJ gave other valid reasons for disregarding Dr. Brandt's May 2002 opinion of disability and expresses no opinion as to the extent of Greere's impairments, or whether she is or is not disabled within the meaning of the Social Security Act. The Court does not require any result. This remand simply assures that the ALJ applies the correct legal standards in reaching a decision based on all the facts of the case.

A judgment in accordance with this Memorandum Opinion and Order will be entered.

---

[2] Although this evidence was not before the ALJ, because it was before the Appeals Council, the Court must consider it when evaluating the Commissioner's decision for substantial evidence. *See, O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)(new evidence becomes part of the administrative record to be considered by the Court when evaluating the Commissioner's decision for substantial evidence).

                                              _____

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**